**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**SHAQUITA JEFFERSON**                                                                      **PLAINTIFF**

**VS**                                                        **CIVIL ACTION NO. 1:25-cv-00167-RPC-DAS**

**NEURALOGIX MANAGEMENT, LLC,
PEDIATRUST COLUMBUS, LLC and
GULFCO OF MISSISSIPPI, LLC**                                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Pediatrust Columbus, LLC's Motion to Dismiss and Alternatively Motion to Sever. [Doc. 66]. For the reasons outlined below, the Court **GRANTS** the Motion to Dismiss and the Motion to Sever is denied as **MOOT**. Pediatrust is hereby **DISMISSED with prejudice** from this suit.

## Factual Background

Plaintiff Shaquita Jefferson brings this action against her former employers, Neuralogix Management, LLC ("NLM") and Pediatrust Columbus, LLC ("Pediatrust"), as well as financial lender Gulfco of Mississippi, LLC ("Gulfco"). [Doc. 60]. A summary of Jefferson's allegations against each defendant is necessary as she makes claims involving collaboration of the parties.

### I.      Neuralogix Management, LLC

Jefferson began working for NLM on September 9, 2024, as a remote Monitoring Technician under Technical Director, Bobby Jo Burns. [Doc. 60]. She alleges that during the first several months of her employment her time records reflected a consistent full-time workflow. *Id*. However, in November 2024, when Burns delegated employee scheduling responsibilities to Amber Trest, Jefferson contends that her scheduled work hours were immediately and drastically reduced. She alleges that she contacted Burns in December 2024, to inquire as to why her hours

1

were being reduced, despite her alleged seniority over newly assigned technicians. According to Jefferson, Burns responded stating that technician, Devin Boyle, who is white, had seniority over her, even though Boyle was hired after Jefferson and primarily worked as a field technician. Jefferson further alleges that, on February 5, 2025, Trest denied her written request to volunteer for an open shift. Six days later, on February 11, 2025, Jefferson notified NLM management that she was experiencing internal harassment, unauthorized scheduling changes, and disparate treatment in the reassignment of work shifts.

Following her internal complaint, Jefferson filed an administrative inquiry on February 17, 2025, with the Equal Employment Opportunity Commission ("EEOC") against NLM. Two days later, she sent an email to NLM's administrative agent, Susan Rideau, describing what she characterized as ongoing workplace harassment and management's failure to investigate her complaints. Jefferson alleges that after filing her inquiry with the EEOC and submitting a paid-time-off request on February 20, 2025, NLM reduced her from full-time to part-time status without explanation. Four days later, on February 24, 2025, NLM hired a new remote monitoring technician, Marti Price.

On February 26, 2025, Jefferson received a letter from NLM Chief Executive Officer, Greg Eckert allegedly acknowledging her complaints of harassment and discrimination and advising her that her allegations of racial discrimination were unfounded. Jefferson further alleges that, during her shift on March 4, 2025, NLM's patient monitoring software expired due to a technical error, causing the monitoring system to fail and leaving Jefferson's assigned patients unmonitored. Jefferson alleges that she promptly notified Burns and Price of the software failure and that Burns responded, stating that she was contacting the software vendor to resolve the issue. On March 6, 2025, Jefferson submitted her shift logs, documenting that ten to twelve of her assigned patients

had remained unmonitored during her March 4–5, overnight shift because of the software issue. Later that day, NLM terminated Jefferson's employment, citing a HIPPA violation as the cause of the termination. Jefferson alleges that NLM subsequently filled her remote overnight technician position with Lauren Morvant, whom she contends possessed significantly fewer professional qualifications than her.

On July 18, 2025, the EEOC completed its administrative processing of Jefferson's claim and issued a formal Notice of Right to Sue to Jefferson. *See* [Doc. 60 at pg. 29]. NLM filed its formal Position Statement, on July 28, 2025, incorporating its Employee Handbook, corporate monitoring protocol, and operational policies. *Id*. The next day, the EEOC issued a written agency directive instructing Jefferson to submit a detailed written rebuttal pointing out factual discrepancies in NLM's brief, identifying further witnesses, and explaining her claims. On August 11, 2025, Jefferson submitted a written rebuttal response to NLM's position statement. On December 22, 2025, Jefferson filed a formal administrative request for notice of right to sue.

## II.     Pediatrust Columbus, LLC

While still employed with NLM, on January 28, 2025, Jefferson also began working for Pediatrust as an Activities Coordinator. According to Jefferson, on February 25, 2025, she emailed Pediatrust management to report what she believed were critical safety concerns, regulatory noncompliance, and severe understaffing at the facility. Specifically, Jefferson alleged that Pediatrust had failed to comply with Mississippi's Prescribed Pediatric Extended Care ("PPEC")[1] guidelines by leaving her alone to supervise four to five medically fragile children while other staff members, including the Director of Nursing, BJ McDaniel, declined to assist or respond to operational communications at the facility. Jefferson alleges that the next day, McDaniel

---

[1] *See* Miss. Code Ann. §§ 41-125-1, *et. seq.* ("Prescribed Pediatric Extended Care Centers").

3

confronted her regarding the email, yelling at her in the presence of facility staff and children. According to Jefferson, McDaniel instructed her to stay out of the playroom because of the concerns she had reported. Jefferson further alleges that, following the incident with McDaniel, she discovered a black knife beneath the tire of her van.[2]

On March 3, 2025, Jefferson sent a text message to Ashley Dunlap, discussing her concerns regarding company policy and patient privacy under the HIPPA. On March 4, 2025, McDaniel issued a directive allegedly ordering Jefferson to stop wearing protective gloves in the hallways while performing her assigned sanitation duties because "corporate said so." Jefferson contends that the next day, McDaniel and Traci Page met with her to discuss the issue of operational hours and demanded that Jefferson cross-train to serve as a classroom aid or certified nursing assistant to pick up additional hours.

On March 12, 2025, McDaniel issued a written warning to Jefferson regarding her attendance. Jefferson alleges that McDaniel also told her that her position as Activities Coordinator was not important and that corporate did not have to keep the position available. According to Jefferson, the written warning concerned only attendance disputes and contained no complaints regarding the performance of her actual job duties. The next day, corporate representative, LeAnn Pittenger, visited the facility and held meetings with staff members, including newly hired white employees. Jefferson contends that Pittenger intentionally excluded her, the only black employee among the recent hires, from the meetings. Jefferson also alleges that all the newly hired white employees were provided with company t-shirts, while she was not.

Jefferson emailed the owner of Pediatrust, Tommy Pittenger, on March 17, 2025, reporting what she alleged to be ongoing workplace bullying, disparate treatment, and retaliation stemming

---

[2] For reference, the Court notes that the knife appears to be plastic. *See* [Doc. 60-1 at pg. 30].

4

from her report of safety concerns on February 25. Jefferson alleges that McDaniel confronted her the next day, on March 18, 2025, after she had clocked out for the day, demanding that she discuss what McDaniel described as "crazy emails" that Jefferson had sent to corporate management. According to Jefferson, she informed McDaniel that she was off the clock and McDaniel threatened to clock her back in to require her participation in the discussion.

Jefferson emailed Pittenger again on March 19, 2025, detailing management's bad faith attempts to force her into unauthorized nurse's aide labor and discussing management's actions, which she contended constituted workplace bullying and retaliation. On March 20, 2025, Pediatrust terminated Jefferson's employment. Jefferson alleges that Tommy Pittenger informed her that she was being terminated because she did not fit company culture.

Following her termination from Pediatrust, Jefferson applied for unemployment benefits. According to her complaint, Pediatrust appealed her award of unemployment benefits and submitted false information regarding alleged employment misconduct in an effort to prevent her from receiving the benefits.

### III.    Gulfco of Mississippi, LLC

On March 31, 2023, Jefferson took out a loan from Gulfco d/b/a Tower Loan of Columbus, in the amount of $4,953.15. [Doc. 68-1]. On January 30, 2024, Gulfco filed a Complaint against Jefferson in the County Court of Lowndes County, Mississippi styled *Gulfco of Mississippi, LLC v. Shaquita W. Jefferson*, bearing Cause No. 2024-0074-CVS, alleging that Jefferson had defaulted under the terms of the loan and seeking judgment in the amount of $5,090.46.[3] [Doc. 68-2]. The county court issued a Summons to Jefferson that same day, and Jefferson was served with a copy of the summons and complaint on March 4, 2024. *Id.* at pg. 12-13. Jefferson did not

---

[3] Upon Jefferson's default, Gulfco accelerated the balance under the terms of the loan agreement; accordingly, the amount sought included pre-computed finance changes. [Doc. 68-2].

5

answer the Complaint, and on September 3, 2024, Gulfco filed an Application for Entry of Default and Motion for Default Judgment. *Id*. at pg. 14-16. On October 1, 2024, the county court entered a Default Judgment against Jefferson, awarding Gulfco: (1) $4,951.46 in principal; (2) pre-judgment interest at the contract rate of interest of 30.75% from the date the complaint was filed; (3) post-judgment interest at the contract rate of interest of 30.75%; (4) attorney's fees of $1,649.00; and (5) all costs of court. *Id*. at pg. 21-26. On March 18, 2025, Gulfco filed a Suggestion for Writ of Garnishment against Triangle Federal Credit Union, where Jefferson maintained a savings account, and the clerk issued a Writ of Garnishment to the credit union that same day. *Id*. at pg. 27-28. On October 6, 2025, Gulfco filed a Suggestion of Writ of Garnishment against Walmart, Inc. and the clerk again issued a Writ of Garnishment that same day.[4]

Jefferson contends that Gulfco intentionally delayed issuing the writs of garnishment until after her employment with Pediatrust was terminated on March 20, 2025. According to Jefferson, on March 28, 2025, Gulfco executed an unauthorized bank garnishment of $450.00, from her savings account at Triangle Federal Credit Union. Jefferson submitted what she describes as a "formal opposition notice" to Tina Walker[5] requesting that the garnishment be halted because her employment had been terminated. Jefferson argues that the timing of the garnishment, when considered alongside when she made her safety violation reports to Pediatrust management, demonstrates that Gulfco's collection efforts were made in retaliation for her protected activity – reporting/alleging safety violations committed by Pediatrust. [Doc. 60].

### Procedural History

---

[4] The record is unclear as to why a writ was issued to Walmart, Inc. Jefferson contends that she has not worked for Walmart, Inc. since 2013. *See* [Doc. 60 at pg. 24].

[5] Jefferson identifies Tina Walker as the "senior legal agent," but she does not identify what entity Walker is employed with.

6

On October 16, 2025, Jefferson filed suit in this court alleging racial discrimination in violation of Title VII and 42 U.S.C. 1981 and wrongful termination/retaliation against Pediatrust. [Doc. 1]. On December 12, 2025, Jefferson filed an Amended Complaint, adding NLM and Gulfco as defendants and asserting the following claims: (1) racial discrimination in violation of Title VII against NLM and Pediatrust; (2) retaliation in violation of Title VII against NLM and Pediatrust (3) post-employment retaliation and malice in violation of Title VII against Pediatrust and Gulfco; and (4) violation of the Fair Labor Standards Act ("FLSA") against Pediatrust. [Doc. 8]. On March 27, 2026, Pediatrust filed a motion to dismiss or alternatively to sever. [Doc. 44]. The Court entered an order on May 27, 2026, denying Pediatrust's motion without prejudice and ordering Jefferson to file a Second Amended Complaint complying with the Court's memorandum opinion and order. [Doc. 54].

On June 9, 2026, Jefferson filed her Second Amended Complaint alleging discrimination and retaliation in violation of Title VII and 42 U.S.C. § 1981 against NLM, retaliation in violation of Title VII and 42 U.S.C. § 1981 and violation of the Fair Labor Standards Act ("FLSA") against Pediatrust, and a single abuse of process claim against Gulfco. [Doc. 60]. She alleges that Pediatrust and NLM violated federal employment laws in connection with her employment and termination, and that Gulfco wrongfully garnished her wages following her discharge. Jefferson also alleges that both NLM and Pediatrust utilize Thomas & Company in Nashville, Tennessee, as a common third-party administrator for human resources and unemployment insurance records, and that Pediatrust shares administrative headquarters with Gulfco and Gulfco's parent company, Tower Loan. *Id.* Jefferson alleges that she experienced race discrimination during her employment with NLM through the reduction of her work hours.

7

On March 27, 2026, Pediatrust filed the present Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim or, alternatively, to sever. [Doc. 66]. Jefferson has responded in opposition to the motion. Having reviewed the filings, the Court addresses Pediatrust's arguments in turn.

### Standard of Review

"In reviewing a motion under Federal Rule of Civil Procedure 12(b)(6), the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Watts v. Blue Bell Creameries, L.P.*, No. 3:25-CV-179-KHJ-MTP, 2026 WL 580172, at \*2 (S.D. Miss. Mar. 2, 2026) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). "A valid claim for relief contains sufficient factual matter, accepted as true, giving the claim facial plausibility and allowing the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Watts*, 2026 WL 580172 at \*2. (internal citations omitted). "The plausibility standard does not ask for a probability of unlawful conduct but does require more than a sheer possibility." *Id*. "The Court must accept all factual allegations in the complaint as true, but it is not bound to accept legal conclusions, conclusory statements, or bare assertions without factual support." *Id*. While the Court recognizes Jefferson's status as a *pro se* litigant, such status does not excuse her from the *Twombly*[6] and *Iqbol*[7] pleading requirements. "Dismissal is appropriate when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face and has failed to raise a right to relief above the speculative level." *Howard v. Rue 21 Corp.*, No. 1:16-cv-00061-GHD-DAS, 2017 WL 1102605, at \*2 (N.D. Miss. Mar. 23, 2017).

### Analysis

---

[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Pediatrust moves to dismiss Jefferson's complaint for failure to state a claim for retaliation under Title VII of the Civil Rights Act of 1964 and Section 1981 of the Civil Rights Act of 1866. It also seeks dismissal of Jefferson's Fair Labor Standards Act ("FLSA") violation claim. The Court addresses each claim in turn.

I.      **Retaliation Claims Under Title VII and 42 U.S.C. § 1981**

"Title VII makes it unlawful for an employer to discriminate against an employee because the employee has opposed an unlawful employment practice or because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing related to potentially unlawful employment practices." *McMillian v. City of Aberdeen, Miss.*, No. 1:24cv199-GHD-RP, 2025 WL 1827899, at *3 (N.D. Miss. July 2, 2025).

To establish a claim for retaliation under Title VII or § 1981 against Pediatrust, Jefferson must demonstrate that (1) she engaged in a protected activity, (2) that Pediatrust took an adverse employment action against her, and that (3) there was a causal connection between the protected activity and the materially adverse action. *Sims v. First Bank*, 478 F. Supp. 2d 911, 912 (S.D. Miss. 2006). "An employee has engaged in protected Title VII activity if he or she has (1) opposed any practice made an unlawful employment practice … or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id*.

In her complaint, Jefferson alleges that on February 25, 2025, she engaged in protected activity by reporting internal safety compliance violations to Pediatrust management and was aggressively confronted by management the next day regarding her reports and also found a knife near the tire of her vehicle. [Doc. 60]. Jefferson further contends that her termination from Pediatrust on March 20, 2025, constituted an adverse action taken by Pediatrust in response to her reported safety complaints. "Termination, of course, is a Title VII adverse employment action."

*Cuellar v. Sw. Gen. Emergency Physicians, P.L.L.C.*, 656 F. App'x 707, 709 (5th Cir. 2016). Jefferson has alleged that she reported safety violations and subsequently suffered termination. We agree that for the purposes of this motion, the second and third elements of her retaliation claim are satisfied. Thus, the sole and most critical question in the Court's analysis becomes whether Jefferson's internal reporting of safety violations constituted protected activity.

The Fifth Circuit has held that "[p]rotected activity under Title VII is either opposing any practice made unlawful by [42 U.S.C. 2000e-3(a)], or making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under [the] subchapter." *Id*. (citing 42 U.S.C. 2000e-3(a)) (citations omitted). Here, Jefferson claims that she reported safety violations to Pediatrust management and was terminated shortly thereafter. She does not allege that she reported these safety concerns to anyone outside the chain of command at Pediatrust. Without more, "[a]n internal complaint to an employer does not qualify as protected activity under the participation clause." *See Sider v. Jefferson Par. Hosp. Serv. Dist. No. 2*, No. CV 17-14527, 2018 WL 1844172, *2 (E.D. La. Apr. 18, 2018) (citing *Cuellar*, 656 Fed.Appx. at 709). Because Jefferson has not shown that she engaged in a protected activity, she therefore has not stated a viable claim for unlawful retaliation against Pediatrust under Title VII or § 1981. The claim is therefore dismissed with prejudice.

## II. <u>Violation of the Fair Labor Standards Act</u>

Jefferson also alleges that a violation of the FLSA occurred on March 18, 2025, when her manager confronted her after she had clocked out, demanding that she discuss the emails she had sent to corporate management regarding her safety concerns and threatening to clock her back in for the purpose of this discussion. *See* [Doc. 60]. However, Jefferson fails to specify which

provision of the FLSA this confrontation allegedly violated.[8]  To the extent Jefferson intends to argue retaliation in violation of 29 U.S.C. § 215(a)(3), the Court cannot find that such a violation occurred.

Under 29 U.S.C. § 215(a)(3), it is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." *Id.*  "To state a FLSA retaliation claim, a plaintiff must demonstrate (1) participation in a protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse action." ***Reeves v. AV Nail Spa Ridgeland, Inc.***, 3:22-CV-00042-KHJ-MTP, 2022 WL 3365065, at *5 (S.D. Miss. Aug. 15, 2022).  "The Fifth Circuit allows an informal, internal complaint to constitute protected activity under Section 215(a)(3)." ***Id***.

While Jefferson has shown that she participated in a protected activity under the FLSA, she has not shown that she suffered an adverse employment action as a result of her participation. ***Id***. (citing ***Stewart v. Miss. Transp. Com'n***, 586 F.3d 321, 331 (5th Cir. 2009) ("To constitute prohibited retaliation, an employment action must be materially adverse, one that would dissuaded a reasonable worker from making or supporting a charge of discrimination.") (citations omitted)). Here, Jefferson *does not allege* that the manager confronted her and then terminated her because of the internal reports she made to corporate; *rather*, she contends that the incident with the

---

[8] Interestingly enough, clocking Jefferson back in to discuss employment business would have allowed Jefferson to be paid for the discussion time.

manager itself constitutes the FLSA violation. *See* [Doc. 60 at pg. 35].[9] Because the confrontation alone, without an accompanying adverse employment action, does not satisfy the requirements of Section 215(a)(3), the Court finds that Jefferson has failed to state a viable retaliation claim in violation of the FLSA on this basis. Accordingly, Jefferson's claim is dismissed with prejudice.

### Conclusion

Accordingly, based on the foregoing analysis, it is hereby ordered that Pediatrust's Motion to Dismiss is **GRANTED** and the Motion to Sever is hereby denied as **MOOT**. All claims asserted against Pediatrust are therefore **DISMISSED with prejudice**.

This the 12th day of August, 2026

*Robert P. Chamberlin*
_____
**UNITED STATES DISTRICT JUDGE**

---

[9] *See also* [Doc. 60 at ¶¶ 99-100], wherein Jefferson specifically alleges that the FLSA violation occurred when McDaniel attempted to compel her to an off-the-clock disciplinary discussion and McDaniel's alleged manual manipulation of her timecard.